UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES -- GENERAL

Case No.    **LA CV 12-01131-VBF-JGR**         Dated:        June 6, 2014

Title:      ***Donovan Conner, Petitioner v. M.D. Biter (Warden), Respondent***

---

PRESENT:    HONORABLE VALERIE BAKER FAIRBANK, SENIOR U.S. DISTRICT JUDGE

N/A                                    N/A
Courtroom Deputy                       Court Reporter

ATTORNEYS PRESENT FOR APPELLANT        ATTORNEYS PRESENT FOR APPELLEES

N/A                                    N/A

**PROCEEDINGS (IN CHAMBERS):  Opinion & Order (1)   Overruling the Petitioner's Objections;**
**(2)   Adopting Report & Recommendation;**
**(3)   Denying Habeas Corpus Petition;**
**(4)   Dismissing the Action With Prejudice;**
**(5)   Denying a Certificate of Appealability**

Proceeding *pro se*, California state prisoner Donovan Conner ("petitioner") brought this action for habeas corpus relief pursuant to 28 U.S.C. § 2254.  Petitioner asserts claims that the state appellate courts committed AEDPA error in denying his claims for violation of his Sixth Amendment right to self-representation, violation of his Sixth Amendment right to a speedy trial, insufficient evidence that his prior burglary conviction was first-degree, ineffective assistance of trial counsel (seven subclaims), ineffective assistance of appellate counsel (four subclaims), and insufficient evidence that robbery was with specific intent to benefit a gang.  The Magistrate Judge has issued a Report and Recommendation ("R&R") recommending that the petition be denied for lack of merit, and petitioner has filed objections.  For the reasons that follow, the Court will overrule petitioner's objections, adopt the R&R, and deny all the claims in the habeas petition for lack of merit.  As to ground one,

MINUTES FORM 90                                    Initials of Deputy Clerk    ___jmb___
CIVIL - GEN

-1-

petitioner's claim that the state trial court violated his Sixth Amendment right to self-representation after he clearly and unequivocally invoked that right on two occasions, the R&R recommends issuing a certificate of appealability ("COA").  This Court, however, will deny the claim based on a somewhat different rationale than the R&R.  This rationale is not subject to debate among jurists of reason, obviating the need to issue a COA on ground one.  Finally, the Court will direct the entry of judgment by separate document.

**On Ground 1, Sixth Amendment Right to Self-Representation**, the Magistrate correctly concludes that the state court of appeal committed no AEDPA legal error or AEDPA factual error in determining that petitioner never made an equivocal invocation of his right to self-representation which he did not later abandon. As to one of those putative invocations by petitioner, the one on August 12, 2008, the Magistrate urges the Court to determine both that the invocation was equivocal and that petitioner soon abandoned it anyway.  The Court agrees that it was not unreasonable (contrary to or an unreasonable application of any U.S. Supreme Court holding) for the state court of appeal to conclude that petitioner abandoned that August 12, 2008 invocation shortly after it was made.  Thus, even assuming *arguendo* that Supreme Court precedent should have compelled the state appellate court to find that petitioner's August 12, 2008 invocation of his right to self-representation was unequivocal (as petitioner urges), his federal habeas claim fails anyway because he provides no basis permitted by AEDPA for this Court to disturb that court's determination that he abandoned that invocation.

Accordingly, the Court declines to adopt the portion of the R&R which recommends upholding the state appellate court's determination that the August 12, 2008 invocation was equivocal:  R&R page 54 line 9 from "it also failed" through R&R page 55 line 10 ending with the *Stenson* citation.[1]

---

1

**Petitioner has a strong argument that the state court of appeal not only erred, but erred in the stricter AEDPA sense, in finding that his August 12, 2008 invocation of his right to self-representation was equivocal.**  Recognizing this, the Magistrate Judge recommends holding that the state court did *not* commit AEDPA error on this score but issuing a certificate of appealability ("COA") on this claim.  **The better course of action is to sustain the state court's rejection of this subclaim on a different ground, one which is not reasonably debateable.**  Then there will be no need to issue a COA.

Whether an invocation of a constitutional right was unequivocal is a factual issue.  *See Stenson v.*

MINUTES FORM 90                                                                Initials of Deputy Clerk   ___jmb____
CIVIL - GEN

ABBREVIATED BACKGROUND

**Frank Abdelaziz testified that he was working at his liquor store on the morning of March 15, 2005 when two young black men entered the store,** one shorter and heavier than the other, one wearing a red jacket and the other a black sweatshirt.  After the other customers left the store, the two men approached the counter as if to buy something and handed Abdelaziz $20; when he opened the cash register, they pointed guns at him and demanded that he lie on the floor, tried unsuccessfully to tie his hands or arms with plastic ties, and then demanded that he get up and open a second register.  (When "a Mexican lady" walked into the store during the robbery, the shorter robber took her to the back of the store.)  The men took about $7,000 from the cash registers and put it into a black backpack, and one of them took a bottle of Hennessy cognac on the way out.  As soon as

---

*Lambert*, 504 F.3d 873, 882-83 (9th Cir. 2007) ("We hold that the Washington Supreme Court's holding that Stenson's request at trial was 'not unequivocal' was not 'based on an unreasonable determination of the facts.'") (internal state-court citation omitted) (citing 28 U.S.C. § 2254(d)(2)).  *Accord Fields v. Murray*, 49 F.3d 1024, 1032 (**4th Cir.** 1995); *Randolph v. Cain*, 412 F. App'x 654, 657-58 (**5th Cir.** 2010) (collecting cases); *Cain v. Peters*, 972 F.2d 748, 749 (**7th Cir.** 1992) *US v. Mackovich*, 209 F.3d 1227, 1237 (**10th Cir.** 2000) (citing *Hamilton v. Groose*, 28 F.3d 859, 862 (**8th Cir.** 1994) for proposition that "the question of whether a defendant invoked his right to self-representation in an unequivocal manner is a question of fact")).

As to a state prisoner's claim that was adjudicated by a state court on its merits, AEDPA authorizes federal habeas relief if the state court's adjudication of that claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding", 28 U.S.C. § 2254(d)(2).  AEDPA imposes a presumption that a state court's factual findings are correct, but the petitioner can rebut that presumption with clear and convincing evidence, 28 U.S.C. § 2254(e)(1).  Petitioner's own words to the court unequivocally invoking his right to self-representation without qualification on August 12, 2008, arguably constitute clear and convincing evidence that the state court's factual finding was incorrect.

Therefore, it is better not to opine, as the Report does, that the state court of appeal was correct in its finding that petitioner did not unequivocally invoke his right to self-representation on August 12, 2008.

Rather, the Court will sustain the state court's rejection of this claim simply on the basis that even assuming *arguendo* that petitioner unequivocally invoked his right to self-representation on that occasion, there was no AEDPA error in the determination that petitioner abandoned that invocation a few days later.  Unlike the equivocal-invocation determination, the state court's abandonment determination is not subject to debate among reasonable jurists.  Thus, basing the Court's rejection of this subclaim on a narrower ground, obviates the need to issue a COA.

MINUTES FORM 90                                                   Initials of Deputy Clerk   ___jmb___
CIVIL - GEN

the men walked away from the registers, Abdelaziz hit a panic button, and when a customer named Harris walked in and called Abdelaziz's name a few seconds later, Abdelaziz jumped up, went to the door, and saw the men leaving in a black or blue car that seemed to be a Honda Civic. *See* R&R at 6-7. Customer Harris testified that as he entered the store he saw a "black guy wearing black" in the doorway and another man walking behind Harris out of the store, that Abdelaziz got up off the floor when Harris called for him, saying he had been robbed, and that the two men went together to the door of the store and left in a compact car, *see* R&R at 8-9.

**Abdelaziz identified** the thinner man, Mayberry, in an in-field lineup, but was unable to identify the other man (petitioner), explaining that the second man had been "far away in a car" when he had seen him, *see* R&R at 7. At trial, Abdelaziz was unable to identify petitioner in the courtroom as one of the robbers, but when shown photos he identified Mayberry as the thinner gunman and petitioner as the heavier, shorter gunman, *see id.*

**A sales representative for a beer company testified** that he was checking inventory in the walk-in cooler when the robbery began, that one of the robbers put a gun to his head and told him that he would shoot him if he moved, that he ran and locked himself in a bathroom when that robber moved away, that the gunmen told him to come out or they would start shooting through the door, and that he nonetheless stayed locked in the bathroom until police arrived, *see* R&R at 7-8. **A woman named Garcia testified** that when she walked into Abdelaziz's store that morning, she saw a deliveryman on the floor and a black man at the register, saw the deliveryman ran into the restroom and lock the door, and saw another white man enter the store. Garcia further testified that when she was unable to understand what the black man at the register was saying to her because of her lack of proficiency in English, that man – who was wearing all black – took her to a back room and hit her in the chest with his gun, *id.* at 8. **Landsaw testified** that when he walked into the liquor store that morning, a black man wearing a red coat stuck a gun in his ribs and made him walk to the back room – where a "Mexican lady" was already present – and the black man took Landsaw's cell phone, R&R at 8. **Hubert testified** that while he was standing outside the store that morning, he saw a black man in a dark-colored car parked facing out of the parking spot, that two black men came out of the store and got into the car (one wearing a black-and-red jacket) which then sped away, *id.* at 9. A man named McCaferty testified that while he was a passenger in a car passing the store, he saw a dark compact car with at least two passengers go "flying" by, and saw Abdelaziz yelling and pointing outside the store. McCaferty called 911 and followed the car, whereupon he saw two black

MINUTES FORM 90                                    Initials of Deputy Clerk ____jmb_____
CIVIL - GEN

men, one wearing a red jacket and the other wearing dark clothes and a beanie, run up an on-ramp on the same side of the freeway as the store and then across the freeway to the median, *id.*

An officer **Wortman** testified that at about 9 a.m. that morning, he saw a dark-colored Toyota driving a few hundred yards from the store at 80 mph, that he chased the car and ultimately found it stopped in an alley behind a restaurant.  There, the officer testified, he saw a man later identified as Damon Hall standing by the driver's-side door trying to walk away on crutches which he obtained from the back seat, found a black "do-rag" on the front seat, and a grey cell phone near the car; he also searched the freeway off-ramp close to the alley and found three bullets, a bottle of Hennessy cognac, nine twenty-dollar bills, and some plastic ties, *see* R&R at 9-10.

**An officer Youngblood testified** that he found two black men, later identified as petitioner and Mayberry, sitting inside a dumpster behind a building on the other side of the freeway from the alley where Hall was found, two and a half miles from the store.  After police ordered them several times to get out of the dumpster, they did so and were arrested.  Youngblood found thirteen $100 bills in Mayberry's sock and some change and a black "do-rag" in his pocket, while an Officer Fields searched petitioner and found his California I.D. card, a cell phone, photographs, twenty-one $100 bills, and smaller bills, *see* R&R at 10.

An **investigating technician from the county DA** testified that she searched the Toyota (finding a blue bag on the floor in the back, a black sweatshirt on the back seat, and a cell phone outside the driver's door), the off-ramp (observing as others found cable ties, four bullets, and a bottle of Hennessy), and the dumpster where petitioner and Mayberry had been hiding (finding a Motorola phone battery, black hooded sweatshirt, black thermal shirt, red shirt, red jacket, and a backpack containing $3,376, two guns, and a bottle of Hennessy), R&R at 10-11. **Penultimately, an officer Feola testified** that Abdelaziz told him that one of the robbers was wearing all black and a do-rag, baseball cap, or hoodie sweatshirt, while the other robber was "thin" and wearing black pants and a red jacket or top, R&R at 11.  Feola recounted that at an in-field lineup, Abdelaziz had identified Mayberry as the robber wearing red and black but was unable to identify petitioner, *id.*

**Finally, D.A.'s office investigator Nieves, a former police officer, testified extensively as the prosecution's gang expert.**  The gang expert testified that Tree Top Piru was a gang from Compton that was affiliated with the Bloods; that members referred to their gang as *inter alia*  TTP, T, Trees, or "500 block"; and that Bloods-affiliated gangs like TTP used the made-up word "Bompton" to avoid using the letter "C", which

they associated with their enemy the Crips, *see* R&R at 11-12.  The gang expert further testified that TTP members often wore red or red-and-black clothes; that the gang's primary activities were robbery, homicide, and drug trafficking; that Don Carlos Brown was a TTP member previously convicted of attempted carjacking, assault with a  deadly weapon, and discharge of a firearm with a gang-related enhancement; and that Paul Deshawn Pointer was a TTP member previously convicted of robbery and attempted robbery, R&R at 12.

**The expert went on to testify that Mayberry had "500" and "TTP" tattoos on his arm**[2] and was wearing red when arrested, that the backpack found in the dumpster where petitioner and Mayberry were found bore the words "500 Bloc" and "Bompton Rus" and "Tree Gang or don't bang", that Mayberry was known by the gang monikers Satan and Marke Ru, and that Mayberry had previously pled guilty to committing a crime for the benefit of the TTP, R&R at 12-13.  From this evidence, Mayberry's criminal history, and the expert's conversations with police officers, the expert concluded that Mayberry was a TTP member , *id.*  **The expert also opined that Hall was a TTP member** because he had admitted to a parole officer (as documented in writing) that he was a member, was known by the gang monikers D. Cane and Red, was wearing a black shirt and red belt on the day of the robbery, and was associating with TTP members on the day of the robbery, R&R at 13.

**The expert testified that petitioner was a TTP member** based on the facts that he had Piru tattooed on his right arm and "Bompton" and "Trees" on his left arm, he was known by the gang moniker Don-Don, the phone found in his car listed the primary user as Don (its address book listed gang monikers Marke Ru, L Marke Ru, Red, and Chuckie); he lived with a TTP member; a sheriff's department gang validation card documented petitioner's gang membership and tattoos, and he wore clothing typical of a TTP member and associated with TTP members.  **Finally, the expert opined that the robbery benefitted TTP** by bringing in $7,000 (which

---

[2]

*See, e.g., Turcios v. Lewis*, 2014 WL 174971, *12 (C.D. Cal. Jan. 13, 2014) ("[T]here was other compelling evidence that petitioner was a member of the Capone gang", including a detective's testimony that petitioner had gang tattoos and admitted being a member); *Munguia v. Barnes*, 2013 WL 6670343, *4 (C.D. Cal. Dec. 17, 2013) (no AEDPA error in finding evidence sufficient to support gang-related sentencing enhancement on convictions for attempted murder and assault with a deadly weapon, where *inter alia* a detective testified that that gang's primary activities included assaults, petitioner had a gang moniker, petitioner had several gang tattoos, and a search of his house revealed items bearing symbols associated with the gang). *Cf. Romero v. Lewis*, 2013 WL 2177885, *14-*15 (C.D. Cal. May 17, 2013) (Fairbank, J.) ("[A]bundant evidence that he was a gang member had been presented to the jury," including the fact that petitioner had gang tattoos and a gang moniker).

MINUTES FORM 90                                         Initials of Deputy Clerk   ___jmb___
CIVIL - GEN

could be used to fund drug trafficking, buy weapons, and bail members out of jail) and by bolstering the gang's reputation as violent.  He opined that the robbery was committed at the direction of TTP because three members conspired to commit the crime, R&R at 13-14.  **The defense did not call any witnesses**, R&R at 14.

PROCEDURAL HISTORY and AEDPA LEGAL STANDARD

The Report's recitation of the procedural history is accurate and complete for our purposes, as is its statement of the standard for review of a state court's federal constitutional rulings under AEDPA is accurate and thorough.  The Magistrate correctly determines that because the state courts issued reasoned decisions rejecting claims 1-5, this Court's review of the state courts' rejection of those claims must employ AEDPA deference. Conversely, the Magistrate has carefully determined that AEDPA deference does not apply on ground six because no state court ever issued a reasoned decision regarding that claim.  *See* R&R at 14-18.

GROUND 3:  EVIDENCE THAT PRIOR FELONY WAS "SERIOUS" AND A "STRIKE"

In Ground 3 (Pet at 32-35), Conner claims that his conviction violated his right to due process because the evidence presented was insufficient to support the finding that he had been convicted of first-degree burglary and therefore had a prior serious felony conviction and a prior "strike" conviction.  The California Court of Appeal rejected this claim in a reasoned written decision, so the federal habeas court must accord substantial AEDPA deference both to that court's application/interpretation of federal law (28 U.S.C. § 2254(d)(1)) and to its factual findings (28 U.S.C. § 2254(d)(2) and § 2254(e)).  *See* R&R at 16 (citing *Richter*, 131 S. Ct. at 784); *see also Jamerson v. Runnels*, 713 F.3d 1218, 1225 (9th Cir. 2013) (referring to "our duty to apply AEDPA deference to the state court's factual determinations"), *cert. denied*, – U.S. –, 134 S. Ct. 1285 (2014).

As the Magistrate notes, on AEDPA review, a state court's resolution of a sufficiency-of-the-evidence claim is entitled to two layers of deference.  *See* R&R at 19; *see also Long v. Johnson*, 736 F.3d 891, 896 (9th Cir. 2013) (on consideration of petitioner's claim that the evidence presented at trial was insufficient to support his conviction for second-degree murder, panel stated, "[b]ecause this case arises in the context of a habeas petition filed after enactment of [AEDPA], we owe a 'double dose' of deference to state courts.") (quoting *Boyer v. Belleque*, 659 F.3d 957, 964 (9th Cir. 2011), *cert. denied*, – U.S. –, 132 S. Ct. 2723 (2012)).

MINUTES FORM 90                                          Initials of Deputy Clerk    ___jmb____
CIVIL - GEN

First, on direct review, *Jackson v. Virginia*, 443 U.S. 307 (1979) directs a court to ask only whether, "after reviewing the evidence in the light most favorable to the jury's verdict, any rational trier of fact could have found the essential elements of the crime beyond reasonable doubt." *See* R&R at 19 (citing *Jackson*, 443 U.S. at 319); *see also Parker v. Mathews*, 132 S. Ct. 2148, 2152 (2012) (citing *Jackson*).  Second, on AEDPA review, a federal court may grant habeas relief on an insufficient-evidence claim only if petitioner shows that the state court's application of *Jackson* was objectively unreasonable.  *See* R&R at 19-20 (citing *Cavazos*, 565 U.S. at ___, 132 S. Ct. at 4); *see also Parker*, 132 S. Ct. at 2152 (likewise citing *Cavazos*).  Put another way, state-prisoner insufficient-evidence claims that are governed by AEDPA "'must survive two layers of deference to groups who might view [thing]s differently' than a reviewing court on habeas review – the factfinder at trial and the state court on appellate [or collateral] review – as long as those determinations are reasonable."  *Norman v. Berghuis*, 2014 WL 266497, *6 (E.D. Mich. Jan. 24, 2014) (quoting *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009)).  According to the Supreme Court, "[t]he inevitable consequence" of this double deference in § 2254 habeas cases is that federal "judges will sometimes encounter convictions that they believe to be mistaken, but which they must nonetheless uphold."  *Cavazos*, 132 S. Ct. at 4; *see, e.g., Long v. Johnson*, 736 F.3d 891, 897 (9th Cir. 2013) (Watford, J., concurring) (citing *Cavazos*, 132 S. Ct. at 4, and stating, "I have grave doubts about whether the State has convicted the right person in this case.  * * * Despite these misgivings, I join the Court's disposition."), *pet. cert. filed*, 82 U.S.L.W. 3633 (U.S. Apr. 9, 2014) (No. 13-1242).[3]

---

[3]

In *Eley v. Erickson*, 712 F.3d 837 (7th Cir.), *cert. denied*, – U.S. –, 134 S. Ct. 254 (2013), the Seventh Circuit illustrated just how difficult it is to obtain federal habeas relief in the face of this double deference:

We acknowledge that under *Jackson* . . . this is a close case.  But in addition to the first layer of deference we owe to the jury under *Jackson*, we owe a second layer of deference to the Superior Court under AEDPA.  *Id.* [*Coleman*, 132 S. Ct. at 2062]; *see also Cavazos* . . . , 132 S. Ct. 2, 4 . . . .

*Had we been the jury, we might have acquitted Ely; had we been the Superior Court, we might even have reversed his conviction.  But applying our doubly deferential standard of review, we simply cannot conclude that it was objectively unreasonable for the Superior Court to decide that a rational jury could have found Eley guilty of second-degree murder, robbery, and conspiracy to commit robbery beyond a reasonable doubt.*

**Under this doubly deferential standard, the Magistrate is right to conclude that the California Court of Appeal did not contradict or unreasonably apply *Jackson* or any other U.S. Supreme Court holding in concluding that a rational jury could find the evidence sufficient to establish beyond a reasonable doubt that petitioner had previously convicted of a *first-degree* burglary.** First-degree burglary is expressly listed as one of the offense which qualifies as a prior "felony" or prior "serious felony" for purposes of the sentencing enhancements required by Cal. Penal Code §§ 667(a)(1) and 667(e)(1) (2008). *See* R&R at 23-24 (citing Cal. Penal Code § 667(a)(4) and § 667(d)(1) and § 1192.7(c)(18)); *see also Murphy v. Sandor*, 447 F. App'x 824 (9th Cir. 2011) (noting that California's Three Strikes Law "includes first-degree but not second-degree burglary within the definition of a prior serious felony") (citing Cal. Penal Code § 1192.7(c)(18)).

Contra petitioner, the record evidence was not too sparse for a rational jury to find beyond a reasonable doubt that his prior burglary was first-degree. *Contrast Murphy v. Sandor*, 447 F. App'x 824 (9th Cir. 2011) (absence of evidence regarding prior burglary conviction made it objectively unreasonable for state court to conclude that a rational trier of fact could have found prior conviction was first-degree) *with In re Gary F.*, – Cal. Rptr.3d –, 2014 WL 2431517, *1 (Cal. App. May 30, 2014) (evidence sufficient to support conviction for first-degree residential burglary). As the Magistrate recounts, the Court of Appeal rested its rejection of this claim on the fact that the prosecution introduced competent evidence that petitioner was arrested on suspicion of felony burglary (a fingerprint card from his December 24, 2003 arrest for felony burglary, a card bearing petitioner's fingerprints from the time of trial in the instant case, and expert testimony that the fingerprints from the two cards were a match); evidence that petitioner was actually *charged* with felony burglary in violation of Cal. Penal Code 459 and pled no-contest to that charge; and a plea-colloquy transcript wherein the trial judge stated that he found "the offense in count 01 to be in the first degree." *See* R&R at 25-26 (record citations omitted).

**Moreover, the Magistrate cogently reasons that if petitioner's counsel believed that the prior conviction should have been only second-degree, he would have asked the trial judge to amend the judgment of conviction;** yet petitioner's counsel appeared before the trial court six times and never requested such a correction, *see* R&R at 26. *Cf. People v. Moreno*, 2012 WL 2842744, *3 (Cal. App. July 21, 2010) ("At the sentencing hearing, the court imposed that amount, apparently without recollecting that it had previously

*Id.* at 852-53 (emphasis and ¶ break added) (other internal citation omitted).

advised defendant of a lesser amount.  If a smaller restitution fine had been part of defendant's plea negotiations, presumably defendant or his counsel would have objected to the recommendation by the probation officer or otherwise objected at the sentencing hearing.  No objection was made, which suggests that none of the parties in the trial court believed a restitution fine of $400 violated the terms of the bargain.") (citing *People v. Dickerson*, 122 Cal. App.4th 1374, 1385, 19 Cal. Rptr.3d 545, 552-53 (Cal. App. 2004), *rev. den.* (Cal. 2005).

**Petitioner accurately notes that the state trial judge in his prior burglary case placed him on probation but did not explain his reasons as required by Cal. Penal Code § 462(b).**  The Magistrate rightly concludes that it was not objectively unreasonable for the state court in our case to conclude that a rational jury could accord more weight to the prior court's express finding of a first-degree burglary than to that court's failure to explain its reason for granting probation.  *See* R&R at 27.  *Cf. Tinson v. Grounds*, 2014 WL 211773, *8-*11 (C.D. Cal. Jan. 10, 2014) (no AEDPA error in denying claim that appellate counsel rendered IAC by "failing" to argue that the evidence presented was insufficient to support conviction for first-degree burglary or attempted first-degree burglary).  The Court would add that petitioner fails to identify *any U.S. Supreme Court holding* that compelled the state court to conclude that a rational jury was obligated to find that the prior burglary conviction was not first-degree – despite the prior court's unchallenged on-the-record finding that the offense was first-degree – merely because of its failure to explain why it granted a probation-only sentence.

GROUND 6:  EVIDENCE ON ROBBERY WITH SPECIFIC INTENT TO BENEFIT A GANG

In Ground 6 (Pet at 53-61), Conner claims that his conviction on the "gang-related" sentencing enhancement violated his right to due process because the evidence presented was insufficient to support the jury finding beyond a reasonable doubt that he had committed robbery with the specific intent to benefit a criminal street gang.  As the Magistrate notes, no state court issued a reasoned decision addressing this claim, either on appeal or on state collateral review, so the usual full AEDPA deference to the state court does not apply.  *See also Williams v. Ryan*, 2010 WL 3768151, *7 (S.D. Cal. Sept. 21, 2010) ("Because these claims were not adjudicated on the merits in the state court, AEDPA deference does not apply . . . .") (citing *Killian v. Poole*, 282 F.3d 1204, 1208 (9th Cir. 2002)), *aff'd*, 472 F. App'x 457 (9th Cir.), *cert. denied sub nom. Williams v. McEwen*, – U.S. –,

133 S. Ct. 467 (2012).  This means that the federal habeas court independently reviews the record and determines whether it was objectively unreasonable for the state court to deny this claim under clearly established federal law, *see* R&R at 17-18 (citing *Haney*, 641 F.3d at 1171).  **The Court would further note that "[c]rucially, this is not a de novo review of the constitutional question."**  *Walker v. Martel*, 709 F.3d 925, 939 (9th Cir.) (citing *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003)), *cert. denied sub nom. Walker v. Chappell*, 82 U.S.L.W. 3082 & 3254 & 3257, 134 S. Ct. 514 (2013) (No. 13-128).  "'Rather, even a strong case for relief does not mean the state court's contrary conclusion was unreasonable.'" *Walker*, 709 F.3d at 939 (quoting *Richter*, 131 S. Ct. at 786); *see, e.g., Alcaraz v. Grounds*, 2012 WL 1619914, *4 (C.D. Cal. Apr. 12, 2012) (urging this independent reasonableness review on IAC claims which "were denied . . . by the California Supreme Court without any citation or explanation"), *R&R adopted*, 2012 WL 1616967 (C.D. Cal. May 9, 2012).[4]

Petitioner complains that the gang expert provided no direct or circumstantial evidence that he intended to commit his crimes for the benefit of TTP as required for a sentencing enhancement under Cal. Penal Code § 186.22(b)(1), *see* R&R at 20.  But as the Magistrate points out, the California court which rejected this claim had before it the expert's testimony that petitioner and Mayberry both had tattoos on their arms reading Piru, Trees, TTP, 500, and Bompton; that TTP and Piru were written on a backpack found in the getaway car; that fellow robber Mayberry had pleaded guilty in a prior case to committing a crime for the benefit of TTP; that getaway driver Hall's parole records reflected his admission that he was a TTP member; that petitioner lived with a TTP member; and that petitioner's cell phone included the gang monikers of several TTP members.  *See* R&R at 21.

The Magistrate concludes, "Thus, the evidence amply showed that Petitioner, a Tree Top Piru member, robbed a liquor store with two codefendants from the same gang."  R&R at 22.  **To reflect the Court's limited role under AEDPA and the deferential AEDPA standard of review, the Court would rephrase that to say that "Thus, there was nothing objectively unreasonable about the state court determining that the evidence was sufficient for a rational jury to find that petitioner was a member of the TTP gang and**

---

[4]

Notably, the absence of the customary AEDPA deference to a state court's silent denial of a constitutional claim does *not* change AEDPA's rule that *factual* determinations by the state court are presumed to be correct and this presumption may be rebutted only by clear and convincing evidence.  *See Estrada v. Cate*, 2014 WL 2465198, *12 (S.D. Cal. **June 2, 2014**) (quoting *Nulph v. Cook*, 333 F.3d 1052, 1057 (9th Cir. 2003)).

MINUTES FORM 90                                                    Initials of Deputy Clerk    ___jmb___
CIVIL - GEN

robbed the liquor store with two fellow TTP members." The Magistrate correctly states that under California appellate precedent, that was enough on its own to satisfy the intent element of the gang-related enhancement. *See* R&R at 22 (citing *Emery*, 643 F.3d at 1215 (citing *Albillar*, 244 P.3d 1062); *see also Jake v. Felker*, 481 F. App'x 325, 326 (9th Cir. 2012) ("[T]here was substantial evidence that Petitioner intended to and did assist Underwood and Filer in murdering Bates. There was also sufficient evidence that Underwood and Filer were Gangster Disciples members . . . . Therefore, we find that the district court did not err in concluding that the California Court of Appeal's determination that there was sufficient evidence supporting the enhancement as defined by the California courts was not an objectively unreasonable application of *Jackson*.").[5]

   **Further bolstering the Magistrate's rejection of this insufficient-evidence claim, the Court would add** that a rational jury could consider gang expert Nieves's testimony that robbery was one of the TTP gang's primary activities, as evidence that petitioner intended to commit these robberies to benefit TTP. *See Rodriguez v. Biter*, 2013 WL 2351291, *12-*13 (C.D. Cal. May 16, 2013) (Fairbank, J.) ("[T]he gang expert testified that the primary purpose of Sur Town included the commission of robberies, which supports the finding that the robbery was gang-related under § 186.22(b)(1). The gang expert's testimony about Sur Town's purpose also supported the finding that petitioner's commission of the felon-in-possession crime was gang-related within the meaning of § 186.22(b)(10), particularly in light of Ramirez's testimony that petitioner used the firearm to effectuate the robbery."); *see also People v. Cook*, 2014 WL 1690755 (Cal. App. Apr. 30, 2014) (evidence at trial was sufficient to prove defendant committed the robbery with the specific intent to benefit a gang, emphasizing gang expert's testimony that the primary activities of the gang in question included robberies and burglaries).

   **The Court has reviewed petitioner's objections on the gang-enhancement insufficient-evidence claim and finds them to be conclusory and unavailing.** Petitioner merely "resubmits his argument that the People's gang expert's testimony, i.e., that Petitioner committed his crimes for the benefit of a gang, was 'merely

---

   5

   *Cf. Tran v. Horel*, 446 F. App'x 859, 860-61 (9th Cir. 2011) ("[T]here is sufficient evidence upon which a rational trier of fact could find that Tran committed the offense with the specific intent to promote, further, or assist in criminal conduct by gang members. The trial record includes evidence that the four people with whom Tran committed the offense were all members of a gang called the Asian Gangsters. There is also evidence that Tran knew that at least some of the four were gang members."), *cert. denied*, – U.S. –, 132 S. Ct. 2681 (2012).

MINUTES FORM 90             Initials of Deputy Clerk ___jmb___
CIVIL - GEN

speculative' and 'he did not provide any direct or circumstantial evidence of Petitioner[']s own intent.'" Doc 35 at 17 (quoting Pet at 57-58); *see also* Doc 35 at 18 (stating, without further discussion, "there is no evidence indicating that the robbery was committed with the specific purpose of benefit[t]ing the Tree Top Piru gang in some other manner."). Petitioner fails to identify any specific defect in the Magistrate's reasoning, and he fails to identify any U.S. Supreme Court holding which would have compelled the state appellate court to determine that no rational jury could find the evidence sufficient to support the gang enhancement on facts materially similar to our facts. *Cf. McGlown v. Sheldon*, 2012 WL 5270122, *15 (N.D. Ohio May 3, 2012) (denying claim that § 2254 petitioner was denied due process when the state trial court admitted the testimony of a detective who was not qualified as an expert) ("Even though her testimony was ultimately characterized as expert testimony . . . , the foregoing facts do not demonstrate a constitutional violation. *Petitioner has not identified a United States Supreme Court case with similar facts*.") (emphasis added), *R&R adopted*, 2012 WL 5270054 (N.D. Ohio Oct. 22, 2012); *Gilmore v. Dunbar*, 2008 WL 544737, *10 (D. Colo. Feb. 26, 2008) (denying § 2254 petition and stating, "The Colorado Court of Appeals identified and applied the correct governing legal princip[le] . . . . Nothing in the record demonstrates that the state appellate court reached a different result based on facts that were materially indistinguishable from a decision of the Supreme Court, nor did it apply the Court's precedents to the facts in an objectively unreasonable manner."); *Bell v. Bruce*, 2005 WL 2005 WL 2403826, *8 (D. Kan. Sept. 29, 2005) (denying § 2254 petition and stating, "The decision of the Kansas Court of Appeals that counsel was not ineffective in failing to interview witnesses was not contrary to, and was not an unreasonable application of, clearly established federal law.  Bell does not identify any decision of the United States Supreme Court which holds on similar facts that failure to interview all witnesses results in ineffective assistance of counsel.").

GROUND 1:  SIXTH AMENDMENT RIGHT TO SELF-REPRESENTATION

In Ground One (Pet at 25), Conner claims that the state trial court violated his Sixth Amendment right to self-representation by "repeatedly ignoring" his requests to represent himself without inquiring about his reasons for wishing to do so.  On direct appeal, the California Court of Appeal issued a reasoned written decision rejecting a claim corresponding to Ground 1, so this Court must accord AEDPA deference to that court's legal and factual determinations.  *See* R&R at 16 (citing *Richter*, – U.S. at –, 131 S. Ct. at 784).

MINUTES FORM 90                                    Initials of Deputy Clerk   ___jmb_____
CIVIL - GEN

The **U.S. Supreme Court has held that a state criminal defendant has the right under the Sixth and Fourteenth Amendments to represent himself "if he clearly and unequivocally makes such a request."** *Bunn v. Ryan*, 2014 WL 2094194, *4 (D. Ariz. May 20, 2014) (citing *Faretta*, 422 U.S. at 835-36); *accord US v. West*, 2014 WL 1797725, *1, – F. App'x – (5th Cir. 2014) ("[T]o exercise the right to self-representation . . . [a] request to proceed without counsel must be clear and unequivocal." ) (citing *US v. Cano*, 519 F.3d 512, 516 (5th Cir. 2008)).  "To qualify as unequivocal, 'a defendant must make an explicit choice between exercising the right to counsel and the right to self-representation so that a court may be reasonably certain that the defendant wishes to represent himself.'" *US v. Berry*, – F. App'x –, 2014 WL 323400, *1 (9th Cir. 2014) (quoting *US v. Carpenter*, 680 F.3d 1101-1102 (9th Cir.), *cert. denied*, – U.S. –, 133 S. Ct. 679 (2012)).

**The Magistrate ably recounts the proceedings relating to petitioner's invocations of his right to self-representation in detail (R&R at 27-44)**, and the Court will recount excerpts as necessary in the analysis.  The Magistrate rightly concludes that petitioner has not carried his burden of showing that the state court of appeal committed AEDPA legal error or AEDPA factual error in determining that "his requests to represent himself were not ignored, and they were all either equivocal and/or had been abandoned by [petitioner] . . . ."  R&R at 52.  Petitioner fails to show that the state court of appeal committed any AEDPA error in determining that his first request to represent himself (on **February 1, 2008**) was conditional (conditioned on going to trial quickly) and was in any event withdrawn when he returned to court on February 5, 2008, *see* R&R at 53-54.

Petitioner likewise fails to show that the state court of appeal made any AEDPA error in determining that his second request to represent himself (on **August 12, 2008**) was ineffective.  This is because, even assuming that the August 12, 2008 invocation was sufficiently unequivocal, petitioner abandoned that invocation because he promptly proceeded to allow attorney Clark to appear on his behalf at the next hearing and failed to reassert his request at that hearing.  *See* R&R at 54-55; *cf., e.g., Frazier v. Lamarque*, 14 F. App'x 801, 802 (9th Cir. 2001) ("The state agreed to allow Frazier to represent himself, but refused to continue the trial.  Nonetheless, for reasons unrelated to Frazier's request, trial was continued for six weeks, during which time Frazier appeared in court with his lawyer on numerous occasions . . . .  Because Frazier never renewed his request to represent

MINUTES FORM 90                                   Initials of Deputy Clerk   ___jmb___
CIVIL - GEN

himself at any of those hearings or at his trial, we conclude that he abandoned it.").[6]  Petitioner objects to the conclusion that he abandoned his second request to represent himself, Doc 35 at 6-7, but he does not identify any Supreme Court holding which he believes the state court violated, nor does he present clear and convincing evidence to rebut the statutory presumption that the state court's factual findings are correct.

Petitioner also fails to show that the state court of appeal made any AEDPA error in determining that his third request to represent himself (on **September 12, 2008**) was abandoned:  shortly after saying "no, I want to go pro per," petitioner did not object to the trial judge's statement that petitioner had a "semi-guarantee" that

---

6

It is on this basis alone – abandonment – that the Court sustains the state court of appeal's determination that petitioner's August 12, 2008 invocation of the right to self-representation was not effective.  **The Court intimates no opinion as to whether it would have been reasonable for the state court of appeal to determine that the August 12, 2008 request was also ineffective because it was equivocal.**  This obviates the need to address petitioner's objections to the Magistrate's statement that the state court did not err in finding that the August 12 request was unequivocal, *see* Doc 35 at 4-6.

There is a strong argument to be made – per petitioner – that under U.S. Supreme Court precedent alone, the plain language the petitioner used on August 12 constituted an unequivocal invocation of his right to represent himself, when viewed in context:  "I would really like to move on with the case" and "I want to go pro per."

The Magistrate cites only Circuit authority for the proposition that that unequivocal language should nonetheless be viewed as somehow equivocal because it "appeared to be a frustrated response to further delay" in his trial, R&R at 54 (citing *Caviness*, 279 F. App'x at 456-67 (request to proceed pro se was equivocal when made as an "impulsive response" to the denial of his motion for substituted counsel) and *Jackson*, 921 F.2d at 888 (trial court may properly deny a request for self-representation that is "a momentary caprice or the result of thinking out loud")).  The Court finds no Supreme Court authority for this proposition.

The Court also intimates no opinion as to whether it would have been reasonable for the state court to determine that the August 12 request for self-representation was equivocal because it was "conditioned on receiving full discovery within three days, which the court said was 'not going to happen' because 'there[] [was] nothing to give right now.'"  R&R at 54-55 (citing *Stenson*, 504 F.3d at 884 (it was reasonable for a state court to characterize a request as equivocal where petitioner said he wished to proceed pro se only if he the court did not permit different counsel).  The Court finds no Supreme Court authority for this proposition.

**Accordingly, the Court will decline to adopt R&R page 54 line 9 from "it also failed" through R&R page 55 line 10 ending with the *Stenson* citation.**

MINUTES FORM 90                                    Initials of Deputy Clerk   ___jmb____
CIVIL - GEN

defense counsel Clark would do his trial next and that the hearing would be adjourned to accommodate Clark's schedule, R&R at 55-56.  Petitioner objects to this reasoning, but the objection is conclusory and unpersuasive:

> It appears that the magistrate judge recommends denial of Petitioner's claim – that he was denied the right to represent himself on September 12 – because Petitioner did not object when the court adjourned the September 12 hearing and Petitioner had a semi-guarantee Clark would do his trial next.  ([R&R] at 56)  Petitioner objects to this recommendation because the magistrate judge fails to explain how these facts demonstrate that Petitioner's September 12 request for pro per status was abandoned or equivocal.  To the contrary Petitioner ask[s] this court to find that neither Clark's "semi-guarantee" or Petitioner's failure to object can play a role in determining whether Petitioner's September 12 request was abandoned or equivocal.

Doc 35 at 7-8.  Notably, petitioner cites no U.S. Supreme Court decisions holding that materially similar conduct and statements by a criminal defendant could not lead a rational jury to find that the defendant abandoned a request to represent himself under similar circumstances.

**Similarly, petitioner fails to show that the state court of appeal made any AEDPA error in determining that his fourth request to represent himself (September 16, 2008) was abandoned as well:** petitioner's substitute counsel stated on that date that "I know [petitioner] wanted to go in pro per today", but later attorney Clark appeared on petitioner's behalf and informed the court that he had spoken with petitioner and that petitioner "object[ed]" to continuing the case to September 26th but "due to my availability he agrees", effectively accepting Clark's representation and abandoning his latest request to represent himself, *see* R&R at 56 (citing Fourth, Fifth, and Eleventh Circuits).  Because the Court rests its rejection of this claim only on the Report's conclusion that the September 16 request for self-representation was abandoned, not on the Report's conclusion that that request was equivocal, the Court need not address petitioner's objections directed at showing that his September 16 request was *un*equivocal.  *See* Doc 35 at 9.

As for petitioner's objections on the abandonment issue, they lack merit.  He argues as follows:

> [T]he record before this court clearly indicates that Petitioner merely agreed to a continuance based on [his defense counsel] Clark's earlier (September 16) *un*availability.

> There is no evidence that Petitioner wanted a continuance because he wanted Clark to continue to represent him and [that] Petitioner agreed to a continuance on that basis.  In support of this

MINUTES FORM 90                                    Initials of Deputy Clerk  ___jmb_____
CIVIL - GEN

latter allegation[,] Petitioner points out that the record, as taken from the state appellate court opinion, shows that petitioner agreed to a continuance due to Clark's earlier "*un*availability." ([R&R at] 37) In reaching its conclusion the Magistrate judge incorrectly substitutes the word"availability" for "unavailability."

Wherefore, petitioner also objects to a finding that he abandoned his September 16 request for self[-]representation "due to" Clark's "availability."  ([R&R at] 56)

Doc 35 at 9 (paragraph breaks added).  But petitioner fails to identify any *substantive* error in the Magistrate's logical reasoning that because petitioner agreed to a continuance after being advised that the purpose of the continuance was to accommodate the schedule and preparation needs of his own defense counsel, it would not be unreasonable to conclude that he thereby necessarily confirmed his agreement to be represented by that counsel – an agreement which was inconsistent with his September 12 putative invocation of his right to self-representation and effected abandonment of that invocation.  Most important, petitioner fails to identify any *U.S. Supreme Court decision* holding that the state court of appeal could not employ such reasoning to find that he had abandoned his previous invocation of the right.

**Finally, petitioner fails to show that the state court of appeal committed AEDPA error in determining that his fifth and sixth requests to represent himself (on October 15 and 16, 2008) were withdrawn.**  As the Magistrate notes, petitioner's counsel Clark asked for a continuance on October 15 because he did not yet have full discovery, and the court granted the continuance over petitioner's objection that he would "go pro per" if that would get him to trial even a day sooner.  When the court advised petitioner that he could go to trial the next day if he represented himself, petitioner retreated from his request and noted the "major problem" that he still needed all discovery that day, which the court pointed out was not possible.  The court instructed the prosecution and petitioner's counsel to figure out what discovery was still outstanding and return to court the next day.  When the parties returned, the prosecutor listed the missing discovery, and the judge advised petitioner that he could go to trial that day but would not have the benefit of full discovery.  In response to the judge's admonition that petitioner would have to just "fish or cut bait" and decide whether to represent himself already, petitioner unambiguously responded, "I would rather be represented by counsel", R&R at 57-59.


GROUND 2:  SIXTH AMENDMENT RIGHT TO A SPEEDY TRIAL

MINUTES FORM 90                                        Initials of Deputy Clerk   ___jmb_____
CIVIL - GEN

-17-

Petitioner was arrested and arraigned in March 2005 and trial began three years and nine months later, in December 2008, R&R at 69.  In Ground One of the instant petition (Pet at 26-31), Conner claims that the state trial court violated his Sixth Amendment right to a speedy trial because his trial did not begin until "more than three and a half years after the charged crime."  On direct appeal, the California Court of Appeal issued a reasoned written decision rejecting a claim corresponding to Ground 2, so this Court must accord AEDPA deference to that court's legal and factual determinations.  *See* R&R at 16 (citing *Richter*, 131 S. Ct. at 784).

The undisputed record as recited by the state court of appeal reflects that pretrial proceedings were suspended from petitioner's first post-arraignment court appearance until March 15, 2006 in order to determine petitioner's competence to stand trial, R&R at 62-63; that the case was then continued at the request of petitioner's counsel until March 27, 2008, when petitioner's counsel said he was ready but the court granted the prosecution's motion to trail to April 7, 2008 for good cause; that the case was again continued at petitioner's counsel's request (due to scheduling conflicts) from April 7 to April 23, 2008.  The undisputed record as recited by the state court of appeal reflects that the case was continued to May 19, 2008 (over petitioner's objection) at the request of codefendant's counsel, who needed time to prepare after codefendant "re-entered the picture"; that trial was continued until June 27, 2008, with petitioner's acquiescence, to afford codefendant time to locate and interview a witness; that trial was continued (over petitioner's objection) to July 7, 2008, to accommodate the prosecutor's trial schedule; and that the trial was further continued from July 7, 2008 (over petitioner's objection) to accommodate codefendant's counsel.  *See* R&R at 63.  Defense continuances were granted to October 15, 2008, sometimes over petitioner's objection, due to defense counsel's unavailability or lack of readiness to go to trial, and petitioner then stipulated to continuing the trial until November 18, 2008, *see id.*  Finally, the court granted a two-week continuance of the trial, into the beginning of December 2008, because an important prosecution witness had been sent out of state for military training, *see id.*

**In rejecting this speedy-trial claim, the California Court of Appeal emphasized** that the case was serious and complex:  codefendant was being tried separately, and just the evidentiary portion of the guilt phase of petitioner's trial took five days, with fourteen witnesses being called during the prosecution's case-in-chief, and petitioner facing seven serious charges, numerous sentencing-enhancement allegations, and additional punishment as a "third striker."  R&R at 65.  The Court of Appeal systematically analyzed the factors set forth

in *Barker v. Wingo*, 407 U.S. 514 (1972): the length of the delay, the reasons for the delay, whether defendant asserted his speedy-trial right, and whether he was prejudiced by the delay. *See* R&R at 61-62 and 65-68. The Court of Appeal reasoned that petitioner was not prejudiced by the delay in trying him because, *inter alia*, his inability to represent himself was caused not by any delay but by his failure to unequivocally invoke his right to self-representation; and because petitioner could not argue that the delay caused any witnesses to become unavailable because he did not call any witnesses at trial, R&R at 68. **The Magistrate rightly concludes (R&R at 68-69) that the state court of appeal did not contradict or unreasonably apply *Barker, Doggett*, or other Supreme Court holding in rejecting this speedy-trial claim.** While the state court found that the post-accusation delay was long enough to raise a presumption of prejudice per *Barker*'s first prong, it also reasonably found that the other three *Barker* factors weighed against finding a speedy-trial violation. *See* R&R at 69.

As to *Barker*'s second factor, there was nothing unreasonable about the state court's determination that much of the delay in trial was attributable to petitioner and his attorneys – including his initial refusal to speak with two doctors assigned to determine his competency to stand trial, and his two attorney's multiple requests to continue trial or acquiescence in further continuances in order to accommodate their own schedules or their need for additional time to prepare a defense, R&R at 69-70 (citing, *inter alia*, *Brillon*, 556 U.S. at ___, 129 S. Ct. at 1290-91 ("delay caused by the defendant's counsel is also charged against the defendant")); *cf., e.g., US v. Abdush-Shakur*, 465 F.3d 458, 465 (10th Cir. 2006) (stating, on direct appeal, "Regardless of the length of the delay, the second prong – the reason for the delay [–] clearly does not suggest a violation of Abdush-Shakur's Sixth Amendment rights. [P]rior to the government's request for a continuance due to the poor health of one of its counsel, Abdush-Shakur himself requested three continuances . . . . Delays attributable to the defendant do not weigh against the Government.  * * *  [Defendant] has sat on his hands for seven months and requested continuances of his own. Finally . . . there was little showing of actual prejudice . . . ."). Further analyzing the second *Barker* factor, the Magistrate endorses the state court of appeal's determinations that there were legitimate reasons for granting the prosecution's continuance requests and that the delay occasioned by the prosecution was far more brief than the delay occasioned by the defense, R&R at 71-72. The Magistrate further notes that some of the delay in trying petitioner was attributable to codefendant Hall, not to the government. The Magistrate cites only district-court authority for the proposition that codefendants' requests for delay do not "count against" either

MINUTES FORM 90                                    Initials of Deputy Clerk   ___jmb___
CIVIL - GEN

petitioner or the prosecution, R&R at 71, **and this Court would further note that petitioner has identified no Supreme Court holding which contradicts this sound reasoning.**

As to the third speedy-trial factor set forth by the Supreme Court in *Barker* – whether petitioner invoked his right to a speedy trial – the state court of appeal not unreasonably determined that, while petitioner did object to five continuances, he specifically agreed or acquiesced in several other continuances around the same time, and he never moved to dismiss the charges on speedy-trial grounds. *See* R&R at 73-74. The Magistrate notes Circuit authority that the third *Barker* factor does not strongly counsel in favor of finding a speedy-trial violation when the defendant did not strongly and consistently insist upon a speedy trial, R&R at 74, as well as unpublished Circuit authority that the third *Barker* factor does not counsel in favor of finding a speedy-trial violation when the defendant failed to move to dismiss the case on speedy-trial grounds, R&R at 74. **This Court would further note that petitioner has not identified any U.S. Supreme Court holding that required the state court to employ legal principles or reasoning different from those just mentioned.**

As to the fourth speedy-trial factor set forth by the Supreme Court in *Barker* – whether petitioner was prejudiced by the delay – the Magistrate cogently reasons that the delay did not prejudice petitioner's defense because he did not call any witnesses at all at trial and has never asserted that that was because some person became unavailable due to the delay. R&R at 75. **This Court would further note that petitioner has not identified any Supreme Court holding that undermines this reasoning or required the state appellate court to employ different reasoning**. *Cf. Hill v. Galaza*, 2007 WL 3232215, *15 (N.D. Cal. Oct. 31, 2007) (denying state prisoner's claim that attorney changes deprived him of the effective assistance of counsel and violated his right to a speedy trial, court stated, "Hill has not shown prejudice from the 3 ½ year period between his arrest and TRIAL."); *Sigsby v. Hinkle*, 2012 WL 346692, *8 (E.D. Va. Feb. 1, 2012) (denying § 2254 habeas claim, "[A]s the [state] Court of Appeals found, Sigsby can make no showing that he suffered prejudice even if his state statutory right to a speedy trial was compromised. * * * Sigsby makes no showing here that he suffered any real prejudice as the result of this time line, such as might have occurred if, for example, the delay caused a key witness to become unavailable."), *app. dismissed due to denial of COA*, 474 F. App'x 228 (4th Cir. 2012).

MINUTES FORM 90                              Initials of Deputy Clerk   ___jmb_____
CIVIL - GEN

**The Court has reviewed petitioner's objections to the Report's analysis of this speedy-trial claim and finds that they lack merit.** Petitioner contends that "when considered in light of *Stroud* [*v. Superior Court*, 23 Cal.4th 952 (Cal. 2000)], *supra*, and *Barsamyan* [*v. Appellate Division of Superior Court*, 44 Cal.4th 960 (Cal. 2008)], *supra*, the *Baker* [*v. Wingo* (U.S.)] scale tips in his favor." Doc 35 at 11; *see also id.* at 12 ("[As to] the second *Baker* factor, Petitioner maintains that the jurist[s] who decided *Stroud*, supra, and *Barsamyan*, supra, would have found this factor weighed in Petitioner's favor because they reversed convictions where the right to a speedy trial was denied due to court congestion . . . ."). Petitioner's reliance on California state-court decisions to criticize the Magistrate's analysis of the *Barker v. Wingo* speedy-trial factors is unavailing:  only a state court's noncompliance with U.S. Supreme Court holdings which can furnish a basis for federal habeas relief on the ground of legal error under 28 U.S.C. § 2254(d)(1).  *See Young v. Pliler*, 273 F. App'x 670, 672 n.1 (9th Cir. 2008) (("Only Supreme Court holdings are controlling when reviewing state court holdings under 28 U.S.C. § 2254; [Supreme] Court dicta and circuit court authority may not provide the basis for granting habeas relief.") (citing *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166 (2003)).

As to the fourth *Barker* factor, petitioner, without citing Supreme Court authority, asserts that he suffered prejudice during the delay occasioned by his first defense counsel becoming a judge and being replaced by another lawyer "because it extended Petitioner's oppressive pretrial detention and [exacerbated] his anxiety and concern." Doc 35 at 14.  "Petitioner ask[s] this Court to resolve the question of whether a defendant's repeated objections to continuances and repeated request[s] to represent himself evinces anxiety or concern." Doc 35 at 14.  But he does not identify any Supreme Court holding that "a defendant's repeated objections to continuances and repeated requests to represent himself" must be treated as asserting a claim for prejudice due to oppressive incarceration, or that such objections and requests must be treated as evidence of such oppressive incarceration.

GROUND 4A:  INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL
FAILURE TO ASSERT RIGHT TO SPEEDY TRIAL AND TO MOVE FOR SEVERANCE

In Ground Four(Pet at 40-42 and 47-48), Conner claims that his trial attorney rendered ineffective assistance by *inter alia* failing to assert his right to a speedy trial.  On collateral review, the state superior court

MINUTES FORM 90                                    Initials of Deputy Clerk    ___jmb___
CIVIL - GEN

issued a reasoned written decision rejecting this claim, so this Court must accord AEDPA deference to that court's legal and factual determinations. *See R&R* at 16-17 (citing *Bonner*, 425 F.3d at 1148 n.13).

      **The Magistrate correctly concludes that petitioner's trial attorney could not have rendered ineffective assistance by failing to move to dismiss the charges due to a speedy-trial violation** because he failed to show that his right to a speedy trial was violated in the first place. *See R&R* at 79-80.  Much of the delay in bringing petitioner to trial was attributable to the need to determine his competency, the schedules of his attorneys, his changing attorneys, and his attorneys' need for time to investigate and prepare his defense, while two of the few continuances requested by the prosecution were necessitated by the valid reason that a key witness was unavailable, and petitioner failed to show how he was prejudiced by the delay, R&R at 80.  *See also US v. Loud Hawk*, 474 U.S. 302, 314, 106 S. Ct. 648 (1986) (assertions of speedy-trial rights "must be viewed in the light of [the defendant]'s other conduct," including any delays requested or occasioned by defendant), *followed by Reed v. Schriro*, 2007 WL 521016, *20 (D. Ariz. Feb. 14, 2007) (James Teilborg, J.) (denying section 2254 petitioner's speedy-trial claim, noting *inter alia*, "In light of petitioner's own motions to continue, his assertion of his speedy trial rights weighs only slightly in his favor."), *aff'd*, 290 F. App'x 982 (9th Cir. 2008), *relief from judgment denied*, 2009 WL 2259976 (D. Ariz. July 28, 2009).

      **In his objections, petitioner charges that the Magistrate has mis-stated his claim of ineffective assistance with regard to the alleged violation of his federal speedy-trial rights.**  Petitioner explains that

> in his petition at page 40 petitioner alleges the [counsel] Hernandez erred by failing to seek dismissal pursuant to [Cal.] Penal Code § 1382, subd. (A)(2)(B).  Also at page 40 Petitioner quotes section 1382 as follows:  'The court, *unless good cause to the contrary is shown*, shall order the action to be dismissed . . . [w]hen a defendant is not brought to trial within 60 days of the defendant's arraignment on an . . . information . . . [.]"  In this case Petitioner had been held beyond the 60[-]day limitation period.  Therefore, Hernandez's failure to move for dismissal was simultaneously unreasonable and prejudicial (under the *Strickland* standard) because Petitioner had a statutory right to dismissal and Hernandez failed to assert that right.

Doc 35 at 15-16 (emphasis added).  As noted above, the state court of appeal sustained the trial court's determination that good cause had been shown for each of the continuances, both those requested by the prosecution and those requested or agreed to by the petitioner.  However, petitioner fails to identify any U.S.

Supreme Court decision holding that it was unreasonable for a trial court to find good cause for a continuance of a criminal trial under arguably-similar circumstances.

**Moreover, petitioner did not even properly present any claim to the Magistrate Judge predicated on his counsel's "failure" to move to dismiss the prosecution under Cal. Penal Code § 1382, so the Magistrate Judge was not obligated to address such a claim.**  The heading of Ground Four states that "[p]retrial and trial counsel [were] ineffective in that they failed to assert Petitioner[']s Constitutional Right to a speedy trial."  Pet at 35 (emphasis added).  Then, throughout his memoranda in support of Ground Four, petitioner contended that his attorneys had failed to raise his right to a "speedy trial" – often specifying that it was a "constitutional" or "federal" right, not that they failed to request dismissal of the charges pursuant to some state statute.  *See, e.g.,* Pet at 40 (counsel "failed to bring a motion to dismiss the charges against Petitioner base[d] on an asserted violation of Petitioner's federal right to a speedy trial"); Pet at 41 (counsel "failed to bring a motion to dismiss the charges against Petitioner base[d] on [his] Constitutional and federal right to a speedy trial"); Pet at 42 (counsel "failed to bring a motion to dismiss the charges against Petitioner base[d] on an asserted violation of Petitioner[']s federal right to a speedy trial"); Pet at 47-48 ("pretrial and trial counsel [were] incompetent in that both[] failed to move for a dismissal of the charges against Petitioner base[d] on an asserted violation of Petitioner's federal right to a speedy trial").

Indeed, in his 14-page ineffective-assistance argument (Pet at 35-49), petitioner mentions section 1382 only twice: first, in briefly noting that "[o]n April 23, 2008, pretrial counsel . . . failed to move for a dismissal under 1382 Subd (a)(2)(B)" (Pet at 40), and second, in asserting that he was prejudiced by counsel's failure "to move for a dismissal of the charges against Petitioner base[d] on an asserted violation of Petitioner's *federal* right to a speedy trial" because counsel somehow "waived any claim Petitioner had under Section 1382(a)(2)(B), there[by] depriving Petitioner of a meritorious issue for appeal" (Pet at 48) (emphasis added).  Because petitioner never adequately asserted any claim that counsel was constitutionally ineffective for failing to move to dismiss the charges pursuant to Cal. Penal Code § 1382, the Magistrate Judge was not required to address any such claim.

MINUTES FORM 90                                     Initials of Deputy Clerk   ___jmb____
CIVIL - GEN

In any event, if petitioner has asserted a claim that his counsel rendered ineffective assistance by failing to move to dismiss the charges pursuant to Cal. Penal Code § 1382, it lacks merit.  **First,** petitioner fails to show that he was prejudiced by the delay in trial, for the reasons discussed in the R&R at 74-75 and 80.  **Second,** even if counsel had filed such a motion to dismiss the charges and the state trial court had granted it, petitioner fails to show that the charges likely would not have been re-filed.  *See* Cal. Penal Code § 1387.1 (allowing the prosecution to re-file felony charges up to three times in certain circumstances); *Maxey v. Hill*, 2011 WL 5873031 (C.D. Cal. 2 (C.D. Cal. Sept. 19, 2011) (although CPC 1387 generally bars the prosecution from re-filing felony charges after they have been twice dismissed, an exception allows refiling after two dismissals where one dismissal was due to excusable neglect and the prosecution is not acting in bad faith); *Willie v. Schulties*, 2011 WL 3681625, *4 (C.D. Cal. July 15, 2011) ("California law provides that the prosecution may refile violent felony charges three times, so long as one of the prior dismissals was due to excusable neglect and the prosecution is not proceeding in bad faith."), *R&R adopted*, 2011 WL 3681567 (C.D. Cal. Aug. 18, 2011); *see, e.g., Smith v. Curry*, 2007 WL 841747, *25 (E.D. Cal. Mar. 20, 2007) (petitioner failed to establish prejudice resulting from counsel's failure to file a motion to dismiss charges due to a discovery violation because even if the trial court had granted that motion, petitioner failed to show that the prosecution would not have refiled the charges), *R&R adopted*, 2007 WL 2253520 (E.D. Cal. Aug. 3, 2007), *aff'd*, 580 F.3d 1071 (9th Cir. 2009); *cf. People v. Lomax*, 49 Cal.4th 530, 557, 234 P.3d 377, 401, 112 Cal. Rptr.3d 96, 124 (Cal. 2010) (noting, on direct appeal, that defendant failed to establish prejudice from the court's failure to grant a CPC section 1382 motion to dismiss charges because the prosecution could have simply refiled the charges).

The Magistrate also correctly concludes that petitioner's trial attorney could not have rendered ineffective assistance by failing to move to sever petitioner's trial from codefendant's.  **The Court must disagree with part of the Magistrate's rationale on this subclaim, however.**  The Magistrate states that a motion to sever "was unlikely to succeed given the court's indication that it had already considered whether to sever and was not inclined to do so."  R&R at 80; *cf. Leon v. Ryan*, 2014 WL 289980, *25-*26 (D. Ariz. Jan. 27, 2014) ("[T]he TRIAL court indicated in its ruling on Petitioner's PCR that, even had Leon's counsel moved for reconsideration based on that question, he would not have been successful.  Counsel cannot be ineffective

for failing to do that which would have been futile.") (citing *Rupe v. Wood*, 93 F.3d 1434, 1444-45 (9th Cir. 1996)).   But the Magistrate cites no authority for the notion that the merit of a motion is to be measured by the trial judge's stated willingness to grant that motion.   On the contrary, whether a motion or objection would have had merit must be determined by consulting the governing law at the time when counsel arguably should have made the motion.   If the motion would have had merit under then-prevailing law, the motion would not become "meritless" merely because a judge stated or implied that he was inclined to deny it.

Nor can one say that it is *ultimately* "futile" to make a motion which has merit under the law merely because it appears that the trial court will deny it:   reversal of such an erroneous ruling is available on direct appellate review.   **By making a timely motion/objection, even if the trial court denied it, petitioner's counsel would have enabled petitioner to have the claim adjudicated by the state appellate courts.   Conversely, the failure to make a timely motion/objection typically results in outright forfeiture of any claim on direct appeal in the California courts.**   *See People v. Sepulveda*, 2010 WL 2089986, *3 (Cal. App. May 26, 2010) (when a criminal defendant fails to make an objection on an issue in the trial court, the appellate courts will not review the claim even under the demanding plain-error standard, but rather will consider defendant's claim to be waived) (citing *People v. Redd*, 48 Cal.4th 691, 229 P.3d 101 (Cal. 2010) and *People v. Dykes*, 46 Cal.4th 731, 757, 209 P.3d 1, 29 (Cal. 2010) ("But trial counsel's failure to object in a timely manner to asserted prosecutorial misconduct also results in the forfeiture of the claim on appeal.") (citing *People v. Stanley*, 39 Cal.4th 913, 140 P.3d 736 (Cal. 2006))).   *See, e.g., Lee v. McEwen*, 2014 WL 235277, *5 (E.D. Cal. Jan. 22, 2014) (stating, in § 2254 case, "Recognizing that his challenge to imposition of the upper term is forfeited because defense counsel failed to object at sentencing when the court orally pronounced sentence, defendant raises ineffective assistance of counsel.") (citing *People v. Scott*, 885 P.2d 1040, 9 Cal.4th 331, 348-56 (Cal. 1994)); *Walker v. Martel*, 709 F.3d 925, 929-30 (9th Cir.) ("During his trial, the sheriff's office placed a knee restraint on one of Walker's legs under his pants.   It is undisputed that several members of the jury became aware of it.   * * *   On direct appeal, the California Supreme Court held that any objection to the use of the brace had been waived by the failure to object at the time."), *cert. denied*, 134 S. Ct. 514 (2013).

**Nonetheless,** the Court can simply assume *arguendo* that petitioner's counsel performed deficiently by failing to move for petitioner to be tried separately from his codefendant.   **The Magistrate is right that**

MINUTES FORM 90                                                        Initials of Deputy Clerk   ___jmb___
CIVIL - GEN

-25-

**petitioner still cannot show ineffective assistance because he cannot show that he was prejudiced, as the trial judge *did* later grant separate trials.**  *See* R&R at 80-81; *see also Crowe v. Gipson*, 2014 WL 1806878, *10 (C.D. Cal. May 7, 2014) (§ 2254 case) ("Even if the Court were to assume *arguendo* that trial counsel's failure to investigate Petitioner's mental illness or to present a mental illness defense constituted deficient performance, Petitioner has simply not shown that he was prejudiced by trial counsel's action or inaction."); *accord Critchley v. Thaler*, 2010 WL 2278294, *11 (W.D. Tex. June 3, 2010) (denying state prisoner's claim that attorney rendered IAC on motion for a new trial) ("Petitioner has not, and cannot, show he was prejudiced as a result of counsel's purported inadequacies" because he "*was* granted a new trial") (emphasis added).

GROUNDS 4B, 4C and 4D: INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

The Court has nothing to add to the Magistrate's cogent analysis of Ground 4B (Pet at 40-42 and 47-48), where petitioner claimed that the state court committed AEDPA error in denying his claim that trial counsel rendered IAC by failing to share all discovery with petitioner.  *See* R&R at 81-82.  The Court likewise has nothing to add to the analysis of Ground 4C (Pet at 42), where petitioner claimed that the state court committed AEDPA error in denying his claim that trial counsel rendered IAC by failing to move to compel additional discovery.  *See* R&R at 83.  Next, the Court has nothing to add to the analysis of Ground 4D (Pet at 42), where petitioner claimed that the state court committed AEDPA error in denying his claim that trial counsel rendered IAC  by *inter alia* failing to adequately oppose the prosecutor's motion for a continuance of the trial.  *See* R&R at 82-83.  There is no Supreme Court precedent suggesting that the state court could not find, as it did, that the prosecution had a legitimate reason for its continuance request (the unavailability of its gang expert, Nieves).

GROUND 4E: INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL for FAILURE TO OBJECT TO GANG EXPERT'S TESTIMONY ABOUT PRIOR ARREST

In Ground Four (Pet at 42-43 and 48), Conner claims his trial attorney rendered ineffective assistance by *inter alia* failing to object to the testimony of the prosecution's gang expert that petitioner had previously been arrested on suspicion of burglary.  On collateral review, the state superior court issued a reasoned written decision rejecting a claim corresponding to Ground 4E, so this Court must accord AEDPA deference to that court's legal

and factual determinations.  *See* R&R at 16-17 (citing *Bonner*, 425 F.3d at 1148 n.13).  Before trial, the parties agreed that the fact that petitioner had a prior felony conviction would be introduced to the jury without mentioning the specific crime, but on cross-examination the prosecution's gang expert testified that petitioner had been previously *arrested* on suspicion of burglary; rather than object, petitioner's counsel elected to have the expert clarify that he had testified not that petitioner had previously committed a burglary for the benefit of a gang but only that petitioner was a gang member when he committed that prior burglary.  *See* R&R at 83-84.

The Magistrate states that "[t]hat reasonable tactical decision fails to establish that [petitioner's second counsel] Clark's performance was deficient."  R&R at 85 (citing Ninth Circuit decisions).  **The Court would rephrase that conclusion to track AEDPA's deferential standard of review:** petitioner has not identified any Supreme Court decision holding that criminal defense counsel's decision to correct rather than object to such testimony was outside the range of reasonable professional competence.  *Cf. Johnson v. Bowersox*, 2013 WL 1316381, *1 (E.D. Mo. Mar. 2013) ("[The state judge] also correctly concluded that defense counsel's strategic decision to cross-examine the witness to reveal to the jury her reluctance to testify rather than objecting on the basis of prosecutorial misconduct did not fall below the standard for effective counsel.  A habeas petitioner must overcome the strong presumption that in the circumstances of his case the challenged action might be considered sound trial strategy.") (citing Eighth Circuit).  Thus, the Magistrate is right to recommend denying this subclaim.


GROUND 4F, INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

The Court has nothing to add to the Magistrate's cogent analysis of Ground 4F (Pet at 43 and 48), where petitioner claimed that the state court committed AEDPA error in denying his claim that trial counsel rendered IAC by *inter alia* failing to move earlier to admit into evidence the clothing which he was wearing when he was "booked" into jail, rather than waiting until the fifth day of testimony (the ninth day of trial overall).


GROUND 4G, INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

In Ground Four (Pet at 48-49), Conner claims that his trial attorney rendered IAC by *inter alia* failing to conduct a reasonable pretrial investigation and by failing to hire a gang expert to counter the prosecution's expert.  On collateral review, the state superior court issued a reasoned written decision rejecting this claim, so this Court

must accord AEDPA deference to that court's legal and factual determinations. *See* R&R at 16-17 (citing *Bonner*, 425 F.3d at 1148 n.13). The Magistrate rightly concludes that this subclaim does not justify federal habeas relief because petitioner fails to specify what evidence his counsel should have uncovered or how an expert's testimony would have helped his case. *See* R&R at 87 (citing *Greenway*, 653 F.3d at 804, and other Ninth Circuit decisions). The Court would add that petitioner has not identified any U.S. Supreme Court holding which the state appellate court contradicted or unreasonably applied in rejecting this subclaim.

### ANALYSIS, GROUND 5A: INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL BY OMITTING A CRUCIAL FACT FROM HIS STATEMENT OF FACTS

In Ground 5A (Pet at 50-52), Conner claims appellate counsel rendered IAC by omitting from the Statement of Facts the crucial fact of how petitioner answered the trial court's question whether he wished to represent himself. On collateral review, the superior court issued a reasoned decision rejecting this claim, so this Court must accord AEDPA deference to that court's legal and factual determinations. First, petitioner alleges appellate counsel omitted from the statement of facts his "crucial answer to the trial court's question whether he wanted to represent himself", recounting the first part of petitioner's answer ("I would much rather be represented by counsel.") but not the second part ("I would also like all the discovery as well in case this matter come[s] up again where I can represent myself and be more prepared than I am now."). This argument fails because as the Magistrate notes, appellate counsel did state in the statement of facts that petitioner "said he would like all the discovery so he could be better prepared to represent himself", R&R at 88. Moreover, the state court of appeal found petitioner's full answer to be equivocal, and "[p]etitioner's statement fails to establish that he unequivocally invoked his right to represent himself rather than simply expressing his desire to be prepared in the event he chose to invoke that right at some point in the future." R&R at 88-89. Petitioner fails to identify any U.S. Supreme Court decision holding that the state court was compelled to find such an answer to be an unequivocal invocation of petitioner's right to represent himself.

Next, petitioner complains that appellate counsel failed to state which of petitioner's requests to represent himself was unequivocal, but the record reflects that appellate counsel clearly identified and described six occasions when petitioner appeared to invoke that right – including his February 1, 2008 request and his February

MINUTES FORM 90
CIVIL - GEN

Initials of Deputy Clerk ___jmb___

-28-

5, 2008 withdrawal of that request – and argued that at least one of those invocations was unequivocal, and the state court of appeal expressly considered all six alleged invocations, *see* R&R at 89.

Lastly, the Magistrate is right that the state appellate courts were not objectively unreasonable in denying the claim that appellate counsel rendered IAC by "failing" to argue ineffective assistance of trial counsel and insufficiency of the evidence to support the gang enhancement, because those claims lacked merit and it cannot be deficient performance to "fail" to make a meritless argument.  *See* R&R at 90 (citing, *inter alia*, *Smith*, 528 U.S. at 288 (appellate counsel may properly decline to raise an issue on direct appeal if he foresees little to no likelihood of success)).  *Cf., e.g., Roberts v. McDonald*, 537 F. App'x 700, 702 (9th Cir. 2013) ("[T]he California courts reasonably applied *Strickland* . . . . [C]ounsel's performance was not deficient because any effort to pursue additional *Romero*-related arguments would have been fruitless."); *Pierce v. Adams*, 506 F. App'x 581, 583 (9th Cir. 2013) ("Pierce's trial counsel did not perform deficiently in failing to raise § 1150, and thus Pierce's appellate counsel did not perform deficiently in failing to argue that trial counsel was ineffective.").

GROUNDS 5B AND 5C:  OTHER INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

The Court has nothing to add to the analysis of claim 5, *see* R&R at 90.

THE REMAINDER OF PETITIONER'S OBJECTIONS ARE ALSO UNAVAILING.

The bulk of petitioner's 95-page objection document do not specifically address the Magistrate's analysis of the state court's rulings.  Rather, petitioner merely attaches and purports to incorporate the brief he previously filed in support of his petition for review on direct appeal to the state Supreme Court.  In so doing, petitioner has not identified any specific defect of law, fact, or logic, *in the Magistrate Judge's report*, which issued of course after petitioner filed those state-court briefs.  As this Court has explained,

> A party is not permitted to lodge an "objection" by incorporating-by-reference the arguments made or authorities cited in some previous filing.  Under Federal Rule of Civil Procedure 10©, parties may incorporate by reference only pleadings or exhibits to pleadings, *see Swanson v. U.S. Forest Service*, 87 F.3d 339, 345 (9th Cir. 1996); . . . , and Fed. R. Civ. P. 7 defines pleading to include only a complaint, an answer, and any court-ordered reply to an answer, not briefs supporting or opposing a motion or any other filing.  * * *

MINUTES FORM 90                                          Initials of Deputy Clerk    ___jmb____
CIVIL - GEN

*Steele v. Harrington*, 2013 WL 5441750, *2 (C.D. Cal. Sept. 25, 2013) (Fairbank, J.); *accord US v. Diaz*, 2011 WL 344093, *1 (N.D. Ga. Jan. 31, 2011) ("In order to trigger de novo review of an R&R, the objection must be 'specific.'  General objections which reassert arguments by reference to prior pleadings do not suffice.") (citing, *inter alia*, *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir. Unit B 1982)).

Nonetheless, in recognition of petitioner's *pro se* status, the Court has reviewed the state-court brief anyway.  *Cf. James v. Ward*, 61 F. App'x 662, 663 (10th Cir. 2003) ("Although James does not mention an argument for equitable tolling in his brief on appeal, he does attach a copy of his objections to the [R&R].  Because James is a pro se petitioner, we will consider the argument for equitable tolling contained there.").  **The Court determines that the state-court brief attached to the Objection fails to identify any Supreme Court holding overlooked, contradicted, or unreasonably applied by the state courts or by the Magistrate.**  *See* Doc 35 Ex. A (Petition for Review in Cal. S. Ct.) at 3-17 (Sixth Amendment right to self-representation) (Doc 35 at 26-40); Doc 35 at 41-46 (right to a speedy trial); Doc 35 at 47-50 (insufficient evidence that prior burglary conviction was first-degree).  Finally, more than a third of petitioner's "objections" consists merely of the California Court of Appeal's opinion on direct appeal (Doc 35 at 51-89) and a proof of service (Doc 35 at 90-91).

## PETITIONER IS NOT ENTITLED TO A CERTIFICATE OF APPEALABILITY

Absent a COA, "an appeal may not be taken from a final decision of a district judge in a habeas corpus proceeding or a proceeding under 28 U.S.C. § 2255", *Chafin v. Chafin*, – U.S. –, 133 S. Ct. 1017, – (2013) (Ginsburg, J., joined by Scalia & Breyer, JJ., concurring),[7][8] and the district court must issue or deny a COA when it enters a final order adverse to the applicant, *see* Rule 11(a) of Rules Governing § 2254 Cases.  In practice,"[i]t is a 'rare step' for a district court to issue a COA," *McDaniels v. McGrew*, 2013 WL 4040058, *3 (C.D. Cal. Aug. 8, 2013) (Fairbank, J.) (quoting *Murden v. Artuz*, 497 F.3d 178, 199 (2d Cir. 2007) (Hall, J., concurring in

---

[7]

*See also* 9th Cir. R. 22-1(e) (appellants "shall brief only issues certified by the district court or the court of appeals") and R. 22-1(f) (appellees "need not respond to any uncertified issues").

[8]

There is an exception not applicable here:  a COA is not required to appeal an order denying a habeas petitioner's motion for appointed counsel.  *See Harbison v. Bell*, 556 U.S. 180, 129 S. Ct. 1481 (2009)).

judgment)).  A COA may issue only if "the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  "The Court is mindful that it 'must resolve doubts about the propriety of a COA in the petitioner's favor'", *Adams v. Hedgpeth*, 2014 WL 1806314, *4 (C.D. Cal. Apr. 9, 2014) (quoting *Lambright v. Stewart*, 220 F.3d 1022, 1025 (9th Cir. 2000) (en banc)), but no such doubt exists here.  Reasonable jurists would not find it debateable that all the claims in this petition lack merit and are not "adequate to deserve encouragement to proceed further."  *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4, 103 S. Ct. 3383, 3385 n.4 (1983).

## ORDER

The Court **DECLINES TO ADOPT Report and Recommendation ("R&R") page 54 line 9 from "it also failed" through R&R page 55 line 10 ending with the *Stenson* citation.**

The Report and Recommendation **[Doc # ___] is otherwise ADOPTED**.

All claims in the habeas corpus petition **[Doc # ____] are DENIED** for lack of merit.

The action is **DISMISSED with prejudice**.

A certificate of appealability is **DENIED**.  This is a final order, but it will not be appealable if petitioner fails to obtain a certificate of appealability from the U.S. Court of Appeals for the Ninth Circuit.

As required by FED. R. CIV. P. 58(a)(1), the undersigned will issue judgment as a separate document.[9]

IT IS SO ORDERED.

---

[9]

*See Jayne v. Sherman*, 706 F.3d 994, 1009 (9th Cir. 2013).  "To comply with Rule 58, an order must (1) be self-contained and separate from the opinion; (2) note the relief granted; and (3) omit or substantially omit the district court's reasons for disposing of the claims."  *Daley v. USAO*, 538 F. App'x 142, 143 (3d Cir. 2013).  Conversely, "[a] combined document denominated an 'Order and Judgment,' containing factual background, legal reasoning, as well as a judgment, generally will not satisfy the rule's prescription."  *In re Taumoepeau*, 523 F.3d 1213, 1217 (10th Cir. 2008).

MINUTES FORM 90                                             Initials of Deputy Clerk    ___jmb_____
CIVIL - GEN